

# IN THE
# TENTH COURT OF APPEALS

### No. 10-10-00152-CR

**ALEJANDRO GARCIA,**

                                                                        **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                                                        **Appellee**

From the 85th District Court
Brazos County, Texas
Trial Court No. 08-00711-CRF-85

## MEMORANDUM  OPINION

Appellant, Alejandro Garcia, was charged by indictment with aggravated robbery, a first-degree felony.  *See* TEX. PENAL CODE ANN. § 29.03(a)-(b) (West 2011).  Garcia pleaded guilty to the charged offense, and, after a jury trial on punishment, he was sentenced to twenty-four years' incarceration in the Texas Department of Criminal Justice—Institutional Division ("TDCJ").  By one issue, Garcia argues that his trial counsel was ineffective because trial counsel asserted that Garcia should receive probation when, in fact, Garcia was not eligible.  We affirm.

# I.  BACKGROUND

Without the benefit of an agreement with the State, Garcia pleaded guilty to the charged offense of aggravated robbery. *See id.*  During the punishment hearing, the jury heard evidence linking Garcia to the alleged robbery of Sajid Butt at Nick's One Stop Food Store in Bryan, Texas, and implicating him in several other robberies transpiring at different locations in Bryan around the same time as the alleged robbery.[1]  Garcia testified on his own behalf and admitted to having participated in the robbery alleged in the indictment; however, he denied the other robberies in which he was implicated. Later, Garcia acknowledged that he had previously received a five-year sentence for felony driving while intoxicated ("DWI"), which was a "third DWI [that] got enhanced."  Garcia denied being sentenced to prison but stated that he "paroled out" in Brazos County.  This admission stunned Garcia's trial counsel.  Nevertheless, Garcia's trial counsel tried to de-emphasize the effects of Garcia's admission by questioning Garcia about what he did after the alleged robbery transpired.  Garcia testified that he went to look for his co-conspirator in the robbery, David Segovia.  When he could not find Segovia, Garcia went to visit family in Laredo, Texas.  Garcia's family convinced him to turn himself in rather than flee to Mexico.  Garcia turned himself in because his "mama raised [him] better than that.  She advised [him] that [he] had to face up to what [he] did."  Garcia's trial counsel then questioned Garcia about several accomplishments he achieved while in prison, including the receipt of his GED; the completion of anger

---

[1] In open court, Ashley Elliott, formerly a receptionist at the America's Best Value Inn ("Inn") in Bryan, identified Garcia as one of the individuals who robbed the Inn on December 13, 2007, a few days prior to the aggravated robbery in this case.  Elliott also identified Garcia as one of the assailants from a photographic lineup conducted shortly after the December 13, 2007 robbery took place.

management, parenting, job-skills, Alcoholics Anonymous, and substance-abuse classes; and the receipt of a certificate of recognition for the "World Bible Correspondence Course."

On cross-examination, however, Garcia admitted to lying to family members about going to the hospital for an alleged gun-shot wound received around the same time as the aggravated robbery in this case and to law enforcement about the incident in this case. Garcia also acknowledged that he has a drinking problem; that he has been arrested and convicted for DWI several times; that he has been convicted of possession of fifty to 2,000 pounds of marihuana, which was apparently reduced to a class A misdemeanor offense, in Houston, Texas; and that he has been convicted of the misdemeanor offense of failing to stop and give information after causing an accident in Portland, Texas.

On re-direct examination, Garcia's trial counsel once again asked Garcia about his prior felony conviction; the following exchange occurred:

| [Garcia's trial counsel]: | Okay. Now, when you and I were discussing whether you'd ever been convicted of a felony or not, did you misunderstand my question or not—not know what I was talking about? |
| --- | --- |
| [Garcia]: | Like I said, probably. I mean, I had—I had gotten my five-year sentence on that, but I had paroled out already so . . . |
| Q: | Okay. Now— |
| A: | I would also like to add that I had already told my previous lawyer before you the same thing. |

Q:                            Did you believe somehow that because you hadn't actually been to the penitentiary it wasn't a felony conviction?

A:                            Like I said, I had never really been to the penitentiary, been locked up this long so I don't really—don't . . .

Q:                            Okay.  Alejandro, you could have denied that you'd ever had that conviction, couldn't you?

A:                            Yes.  Yes, sir.

Q:                            Instead you told the truth; is that correct?

A:                            Yes, sir.

Q:                            Have you told the truth about everything else you've testified to?

A:                            Yes, sir.

Later, the State introduced a certified copy of Garcia's application for probation in which he certified, under penalty of perjury, that he had not been previously convicted of a felony and was, therefore, eligible for probation.  Garcia admitted that he did not read the document and only signed it because a representative from Garcia's trial counsel's office told him to sign it.  Garcia noted that he was not trying to be deceptive when he signed the application for probation.  However, Garcia stated that he told his first attorney about the felony DWI conviction but that he did not tell his current trial counsel.  Garcia assumed that his current trial counsel "got the paperwork from my other attorney . . . ."  Finally, Garcia testified that he observed voir dire, heard counsel explain that one is eligible for probation if he has never been convicted of a felony, and understood what that meant.

During closing argument, Garcia's trial counsel stated that:

> Ladies and gentlemen of the jury, through the years I've had some embarrassing things happen to me in the courtroom. I was very chagrined and very embarrassed to find out that my client—the first time I found that out was today when he was on the witness stand that he had a prior felony conviction; therefore, he's ineligible for probation after I spent so much of my time and your time talking to you about that.
>
> . . . .
>
> Obviously[,] if we'd known or if I had known what the situation was, I wouldn't have done it like that. What I would urge you to do is whatever hostility or misgivings that scenario gives you, I'd urge you to blame me for not doing a better job of communicating with my client. Don't hold it against him.
>
> . . . .
>
> Fortunately[,] in this case[,] no one sustained a bodily injury as a result of Alejandro's participation in this crime. I would submit to you that based on that, the range should move somewhere to 25 to 50 years.

The jury ultimately assessed punishment at twenty-four years' incarceration in the TDCJ and imposed a $5,000 fine. This appeal ensued.

## II. STANDARD OF REVIEW

The United States Constitution, the Texas Constitution, and article 1.051 of the code of criminal procedure guarantee an accused the right to reasonably effective assistance of counsel. *See* U.S. CONST. amend. VI; TEX. CONST. art. I, § 10; TEX. CODE CRIM. PROC. ANN. art. 1.051 (West Supp. 2010); *see also Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 2063, 80 L. Ed. 2d 674 (1984); *Ex parte Gonzales*, 945 S.W.2d 830, 835 (Tex. Crim. App. 1997). To prove ineffective assistance of counsel, Garcia must show that: (1) trial counsel's representation fell below an objective standard of

reasonableness, based on the prevailing professional norms; and (2) there is a reasonable probability that, but for trial counsel's deficient performance, the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 687-95, 104 S. Ct. at 2064-69; *Dewberry v. State*, 4 S.W.3d 735, 737 (Tex. Crim. App. 1999). Whether this test has been met is to be judged on appeal by the totality of the representation, not by isolated acts or omissions. *Rodriguez v. State*, 899 S.W.2d 658, 665 (Tex. Crim. App. 1995). Garcia has the burden of proving ineffective assistance of counsel by a preponderance of the evidence. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999) (citing *Cannon v. State*, 668 S.W.2d 401, 403 (Tex. Crim. App. 1984)).

Our review of counsel's representation is highly deferential, and we will find ineffective assistance only if Garcia overcomes the strong presumption that his counsel's conduct fell within the range of reasonable professional assistance. *See Strickland*, 466 U.S. at 689. The right to "reasonably effective assistance of counsel" does not guarantee errorless counsel or counsel whose competency is judged by perfect hindsight. *Saylor v. State*, 660 S.W.2d 822, 824 (Tex. Crim. App. 1983). Moreover, the acts and omissions that form the basis of Garcia's claims of ineffective assistance must be supported by the record. *Thompson*, 9 S.W.3d at 814. A silent record which provides no explanation for counsel's actions usually will not overcome the strong presumption of reasonable assistance. *Id.* at 813-14. To warrant reversal without affording counsel an opportunity to explain his actions, "the challenged conduct must be 'so outrageous that no competent attorney would have engaged in it.'" *Roberts v. State*, 220 S.W.3d 521,

533 (Tex. Crim. App. 2007) (quoting *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005)).

## III. ANALYSIS

By his only issue on appeal, Garcia asserts that trial counsel was deficient for failing to investigate his prior offenses and for indicating to the jury that Garcia was eligible for probation when, in fact, Garcia was not eligible due to a prior felony conviction for DWI. Garcia alleges that counsel's errors eroded Garcia's credibility before the jury and likely resulted in a higher sentence. Garcia also notes that his trial counsel's errors forced him to perjure himself in front of the jury.

At the outset of our analysis, we note that the record on direct appeal is silent as to Garcia's trial counsel's strategy; ordinarily, a silent record is insufficient to establish the dual prongs of *Strickland*. *See Thompson*, 9 S.W.3d at 813-14 (stating that "in the vast majority of cases, the undeveloped record on direct appeal will be insufficient for an appellant to satisfy the dual prongs of *Strickland*"); *see also Bone v. State*, 77 S.W.3d 828, 835 (Tex. Crim. App. 2002); *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). Nevertheless, assuming without deciding that trial counsel's representation of Garcia fell below the standard of reasonable professional assistance, as articulated in *Strickland*, we cannot say that Garcia has adequately demonstrated that, but for trial counsel's purported errors, he would have received a reduced sentence. *See Strickland*, 466 U.S. at 687-95, 104 S. Ct. at 2064-69; *see also Dewberry*, 4 S.W.3d at 737. The justifications for this conclusion are threefold.

First, Garcia was sentenced at the lower end of the punishment range corresponding to first-degree aggravated robbery. *See* TEX. PENAL CODE ANN. §§ 12.32(a) (West 2011) (stating that the punishment range for first-degree felonies is "for life or for any term of not more than 99 years or less than 5 years"), 29.03(b) (providing that, upon conviction for the offense of aggravated robbery, a defendant is subject to the punishment range corresponding to first-degree felonies). Therefore, trial counsel's alleged errors do not appear to have inflamed the jury to enhance Garcia's punishment. Second, the record contains evidence of Garcia's numerous prior criminal convictions and instances where Garcia lied to family members and law enforcement; thus, Garcia's argument that trial counsel's errors resulted in a critical lessening of Garcia's credibility appears to be overstated given the state of the record.[2] Third, the record reflects that neither the State nor defense counsel were aware of Garcia's prior felony DWI conviction and that, during closing argument, Garcia's trial counsel admitted that Garcia was not eligible for probation, stated that Garcia and his trial counsel had a miscommunication about Garcia's eligibility for probation, and requested that the jury not hold the error against Garcia.[3] These statements, coupled with the facts that Garcia voluntarily turned himself in to law enforcement and his many accomplishments while incarcerated, could have conceivably rehabilitated Garcia's credibility so as to not leave

---

[2] Garcia testified that during the first hour of his interview with police, he denied any involvement in the incident in question, though he later admitted to participating in the alleged aggravated robbery in this case.

[3] Moreover, the record indicates that Garcia's trial counsel investigated Garcia's criminal history and inquired about Garcia's drinking problem and prior DWIs.

the jury with the impression that Garcia was deceptive in making his mistaken probation request. Regardless, other than inviting this Court to engage in conjecture and speculation, Garcia does not adequately explain how trial counsel's purported errors resulted in an increased sentence. *See Ex parte Cash*, 178 S.W.3d 816, 818-19 (Tex. Crim. App. 2005) (holding that a defendant cannot satisfy the second prong of *Strickland* "based on pure conjecture and speculation") (citing *Strickland*, 466 U.S. at 693 (stating that it is not enough for a defendant to show that counsel's errors has some conceivable effect on the outcome of the proceeding)); *see also Mack v. State*, No. 06-06-00222-CR, 2007 Tex. App. LEXIS 3765, at **5-6 (Tex. App.—Texarkana May 17, 2007, no pet.) (mem. op., not designated for publication).[4] Based on the foregoing, we conclude that Garcia failed to prove the second prong of *Strickland*. *See Strickland*, 466 U.S. at 687-95, 104 S. Ct. at 2064-69; *see also Dewberry*, 4 S.W.3d at 737. As a result, we cannot say that Garcia satisfied his burden of proving his ineffective assistance of counsel claims. *See*

---

[4] With regard to the second prong of *Strickland*, the *Mack* court noted the following:

> Second, comparing the evidence against Mack with the sentence that resulted, harm does not appear. The State presented evidence of "numerous thefts, resisting arrest, evading arrest, criminal trespass, felony drugs, felony indecency with a child, bond jumping, skipping out, basically a life of crime, as much of a career criminal as you're going to find." The state asked the jury to assess the maximum sentence of twenty years; Mack urged the minimum of two years', or, at most, five years' confinement. The jury assessed Mack's punishment at ten years' confinement, a sentence in the middle of the range, closer to Mack's suggested sentence, and well below the maximum possible sentence. We would only be speculating to suggest that the result would have been any different in the absence of the State's objectionable conduct. Mack may not meet his burden through conjecture and speculation. Mack has not established that counsel's representation so undermined the proper functioning of the adversarial process that the result was unjust.

*Mack v. State*, No. 06-06-00222-CR, 2007 Tex. App. LEXIS 3765, at **5-6 (Tex. App.—Texarkana May 17, 2007, no pet.) (mem. op., not designated for publication) (internal citation omitted).

*Thompson*, 9 S.W.3d at 813; *see also Cannon*, 668 S.W.2d at 403. Accordingly, we overrule

Garcia's issue.

## IV. CONCLUSION

Having overruled Garcia's sole issue on appeal, we affirm the judgment of the

trial court.

                            AL SCOGGINS
                            Justice

Before Chief Justice Gray,
       Justice Davis, and
       Justice Scoggins
Affirmed
Opinion delivered and filed July 20, 2011
Do not publish
[CR25]